IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JERE HINMAN,<br><br>    Plaintiff,<br><br>v.<br><br>BRIGHTVIEW LANDSCAPE<br>DEVELOPMENT, INC. and AQUATIC<br>DESIGN & ENGINEERING, INC.,<br><br>    Defendants<br><br>and<br><br>BRIGHTVIEW LANDSCAPE<br>DEVELOPMENT, INC.,<br><br>    Third-Party Plaintiff,<br><br>v.<br><br>AMERICAN COMMERCIAL<br>INDUSTRIAL ELECTRIC, LLC and<br>GEORGIA GUNITE AND POOL<br>COMPANY, INC.<br><br>    Third-Party Defendants. | Case No. 3:19-cv-00551<br>Judge Aleta A. Trauger |

## MEMORANDUM

Before the court is the Motion for Summary Judgment filed by third-party defendant Georgia Gunite and Pool Company ("Georgia Gunite") (Doc. No. 86), based solely on the expiration of the statute of repose. For the reasons set forth herein, the motion will be granted.

## I.    PROCEDURAL HISTORY

This lawsuit originally arose out of the construction of an expensive and elaborate pool, described in the Complaint as an "'aquascape' constructed in a natural setting with waterfalls and

extensive landscaping," at plaintiff Jere Hinson's home in Wilson County, Tennessee in 2015 (the "project" or "pool"). (Doc. No. 1, at 1.) In July 2019, Hinson filed suit in this court, based on diversity jurisdiction, against the company with which she contracted to build the pool, BrightView Landscape Development, Inc. ("BrightView") and the company BrightView engaged to design the pool, Aquatic Design & Engineering, Inc. ("ADE"). As relevant here, the Complaint asserts claims against BrightView for breach of contract, breach of implied and express warranties, and negligence.

More than two years later, in August 2021, BrightView sought and was granted leave of court to file a Third-Party Complaint against two subcontractors it had engaged to perform work on the project: Georgia Gunite and American Commercial Industrial Electric, LLC. It filed the Third-Party Complaint (Doc. No. 52) on September 3, 2021, asserting claims for indemnification under the "hold harmless" provisions of its subcontracts with each of the third-party defendants. (Doc. No. 52.) BrightView specifically demands "an order requiring Georgia Gunite to indemnify [BrightView] for all costs, losses, liabilities, expenses (including attorney's fees), judgments, fines, and other amounts incurred by [BrightView] in the lawsuit that is the subject of the Complaint insofar as those amounts are the result of and related to Georgia Gunite's performance under its sub-contract with [BrightView]." (Doc. No. 52, at 7.)

Georgia Gunite has now filed its Motion for Summary Judgment, supporting Memorandum of Law (Doc. No. 87), and Statement of Undisputed Material Facts (Doc. No. 88). It argues that it is entitled to summary judgment, because the Third-Party Complaint is untimely under Tennessee's four-year statute of repose for construction defect claims, Tenn. Code Ann. § 28-3-202. BrightView does not dispute, for purposes of the Motion for Summary Judgment, any of the facts set forth in Georgia Gunite's Statement of Undisputed Material Facts (Doc. No. 96), and

Georgia Gunite does not dispute any of the facts set forth in BrightView's Statement of Additional Material Facts (Doc. No. 98). BrightView opposes summary judgment, arguing as a matter of law that the statute of repose on which Georgia Gunite relies is inapplicable.

## II. FACTS[1]

On March 19, 2015, Jere Hinman and BrightView entered into a design-build contract for the construction of a nearly $1 million pool and associated "aquascape"—including cascades, basins, and waterfalls—at Hinman's residence in Lebanon, Tennessee.

In April 2015, BrightView entered into a subcontract with Georgia Gunite, providing that Georgia Gunite would install certain plumbing and would spray the shotcrete for the pool shell and accompanying waterfall cascades for the project. At the end of April 2015, Georgia Gunite installed the plumbing and shot the shotcrete pool shell and walls as called for in the subcontract. The pool was substantially completed in September 2015.

At some point in November 2015, Hinman complained to BrightView about an abnormally high water bill, and BrightView realized that an expansion joint called for in the design plans had been omitted during the construction of the pool. BrightView, however, had not instructed Georgia Gunite to install an expansion joint, and Georgia Gunite had not included the installation of an expansion joint in its bid to BrightView.

Upon realizing its mistake, BrightView reached out to ADE, the pool designer, to determine a path forward in light of the missing expansion joint. After BrightView and ADE came up with a plan to install the missing expansion joint, BrightView reached out to Georgia Gunite to request its assistance in carrying out the plan. At the end of April 2016, Georgia Gunite went back

---

[1] The facts set forth herein are drawn from each party's response to the other's factual statements. (Doc. Nos. 96, 98.)

to the site of the Hinman project and, at the direction of and in conjunction with BrightView, installed the omitted expansion joint. On May 31, 2016, Ms. Hinman sent Scott Gross of BrightView a photograph and video of her enjoying the pool. After installing the expansion joint in April 2016, Georgia Gunite never heard from BrightView or anyone else regarding the Hinman project until it was served with the Third-Party Complaint on September 13, 2021.

BrightView's claim against Georgia Gunite is premised upon the indemnification provision in the subcontract between them. This clause states, in relevant part:

> Subcontractor indemnifies and holds Contractor, Owner, Contractor's Client (if other than Owner) and Architect . . . (collectively "Indemnitees") harmless from and against any and all claims, demands or actions made by any person or entity whether valid or not, arising out of the performance by Subcontractor . . . of this Subcontract. Subcontractor agrees to reimburse Indemnitees upon demand for any expenses, including reasonable attorney's fees, incurred by Indemnitees in defending against or dealing with any such claims, demands, or actions.

(Subcontract ¶ 13, Doc. No. 52-2, at 9.)

## III.  STANDARD OF REVIEW—RULE 56

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. City of Elizabethtown*, 945 F.3d 968, 975 (6th Cir. 2019). Where, as here, the relevant facts are undisputed, the question of whether the moving party is entitled to summary judgment is purely a question of law. *Woodcock v. City of Bowling Green*, 679 F. App'x 419, 423 (6th Cir. 2017); *accord Bonneau v. Plumbers & Pipefitters Local Union 51 Pension Tr. Fund ex rel. Bolton*, 736 F.3d 33, 36 (1st Cir. 2013).

## IV.  DISCUSSION

Tennessee's statute of repose pertaining to actions related to allegedly defective improvements to real property states in relevant part:

> All actions . . . to recover damages for any deficiency in the design, planning, . . . or construction of an improvement to real property . . . must be brought against any person performing or furnishing the design, planning, . . . or construction of the improvement within four (4) years after substantial completion of an improvement.

Tenn. Code Ann. § 28-3-202. The Tennessee courts have described this provision as establishing an "'outer limit' of liability to all potential actions based on injury to property, 'without regard to the date of discovery.'" *Counts Co. v. Praters, Inc.*, 392 S.W.3d 80, 84 (Tenn. Ct. App. 2012) (quoting *Watts v. Putnam Co.*, 525 S.W.2d 488, 491 (Tenn. 1975)). Section 28-3-202 does not operate to "extend any statute of limitation"; rather, it was "'superimposed' on existing statutes, and was unrelated to the accrual of any cause of action since it expressly stated that it began to run on the date of substantial completion rather than the date of injury or damage." *Counts Co.*, 392 S.W.3d at 84 (quoting *Watts*, 525 S.W.2d at 491).

In *Watts*, the Tennessee Supreme Court expressly adopted and agreed with a decision from the United States District Court for the Eastern District of Tennessee, finding that the legislative intent in passing § 28-3-202 was to

> insulate contractors, architects, engineers and the like from liability for their defective construction or design of improvements to realty where either the occurrence giving rise to the cause of action or the injury happens more than four years after the substantial completion of the improvement.

*Watts*, 525 S.W.2d at 492 (quoting *Agus v. Future Chattanooga Dev. Corp.*, 358 F. Supp. 246, 251 (E.D. Tenn. 1973)).

There is no dispute in the present case that the Hinman project was substantially complete in the fall of 2015 and that the Third-Party Complaint naming Georgia Gunite as a defendant was filed almost six years later, in September 2021. There is also no dispute that, if § 28-3-202 applies, BrightView's third-party claim against Georgia Gunite is absolutely barred. The sole question before the court is whether § 28-3-202 applies to bar a claim premised upon contractual indemnity.

Those courts that have considered the issue, both federal and state, have held that indemnity claims are subject to § 28-3-202. First, in *Agus* (cited favorably by the Tennessee Supreme Court in *Watts*), plaintiffs brought suit against the owners of an apartment building for negligence in the construction and maintenance of the apartment building, following a fire in which the plaintiff's mother had died. The apartment owners filed a third-party complaint for indemnity against the contractor, architect, and engineer who had designed and constructed the apartment building. In response to the third-party defendants' defense premised upon § 28-3-202 (actually its predecessor, Tenn. Code Ann. § § 28-314), the third-party plaintiffs maintained that the statute did not apply to indemnity actions and that, instead, an "action for indemnity does not in fact arise until a judgment has been rendered in favor of the plaintiff and against the defendant, *i.e.*, the third-party plaintiff," and that the applicable statute of limitations at that point was Tennessee's six-year statute generally applicable to contract actions. *Agus*, 358 F. Supp. at 249. The court, "[a]ssuming arguendo that the instant indemnity action is contractual in nature," such that there was a conflict between the two statutes, nonetheless disagreed, finding that § 28-3-302, as the more particular provision, took precedence. *Agus*, 358 F. Supp. at 249. The court also concluded that, because § 28-3-302 on its face purports to apply to "'all actions to recover damages' arising out of defective improvement of real estate" and the more general six-year provision only applies to actions on contracts "not otherwise expressly provided for," there was not actually a conflict between them. *Id.*

It also rejected the third-party plaintiffs' argument that, since a cause of action for indemnity does not actually accrue until a judgment is rendered against the indemnitee, the legislature could not have intended for the statute to apply to indemnity actions, "because the indemnitee's cause of action under facts such as are here presented could and would be barred before it ever arose." *Id.* at 250. As set forth above, the court found the legislative intent to be clear

from the language of the statute: to insulate contractors and the like from actions arising more than four years after substantial completion of the improvement. *Id.* at 251. The court therefore dismissed the indemnity claims as barred by the statute of repose. *Id.*

Likewise, in *Clinton Seafood, Inc. v. Harrington*, No. 1408, 1991 WL 50218 (Tenn. Ct. App. Apr. 10, 1991), the owners of a restaurant brought an indemnity action against a contractor to recover the amount paid by the restaurant owners to a customer who fell on a concrete ramp that was defectively constructed by the contractor defendant. In that case, "[t]he appellants squarely pose[d] the issue: Does the Statute of Repose apply to an action for indemnity?" *Id.* at *1. The appellants argued that "their action is a discrete and distinct one for indemnity, and that they are not seeking to recover for 'any deficiency in the design . . . of real property,'" as a result of which the statute of repose did not apply. The appellees countered that the indemnity action was "essentially derivative and has for its basis the underlying tort action filed to recover damages for defective construction." *Id.* The court, citing both *Watts* and *Harmon v. Angus R. Jessup Associates, Inc.*, 619 S.W.2d 522, 523 (Tenn. 1981),[2] held that "the statutory language 'all actions to recover damages' must be construed to include actions for indemnity, notwithstanding their discrete nature, because they are derived from and arise out of an underlying 'deficiency in the construction of an improvement to real estate.'" *Clinton*, 1991 WL 50218, at *2. The Tennessee Court of Appeals has continued to adhere to that conclusion. *See, e.g.*, *Counts*, 392 S.W.3d at 86 ("[T]his Court has previously held that claims of indemnity, breach of implied warranty, or any claim based on a construction deficiency would be subject to the time limitation found in Tenn. Code Ann. § 28-3-202." (citing *Clinton Seafood*, 1991 WL 50218)).

---

[2] *Harmon* did not address the indemnity question. It held that the statute did not violate the Tennessee Constitution. 619 S.W.2d at 523.

BrightView argues that § 28-3-202 does not apply, because its claim against Georgia Gunite is based on *contractual* indemnity rather than *common law* indemnity. The court is not persuaded that this distinction makes a difference. First, the court in *Agus* presumed that the indemnity at issue was contractual but nonetheless concluded that it was barred. *Agus*, 358 F. Supp. at 249. Second, Tennessee law does not appear to treat common-law indemnity substantially differently from contractual indemnity. As the Tennessee Court of Appeals has explained:

> The concept of indemnification embodies principles of restitution and unjust enrichment. It rests on two principles—that everyone should be responsible for their own wrongdoing and, therefore, that wrongdoers should be liable to persons who are required to pay damages that the wrongdoers should have paid. To further these principles, indemnification requires the complete shifting of liability for loss from one person to another.

> Indemnity obligations are either express or implied. Express indemnity obligations arise from the contracts between the parties, and implied indemnity obligations, whether called equitable or contractual, are imposed by law without the consent or agreement of the parties. Courts will impose an implied obligation to indemnify when the obligation is a necessary element of the parties' relationship, or when justice and fairness demand that the burden of paying for the loss be shifted to the party whose fault or responsibility is qualitatively different from the other parties.

*Winter v. Smith*, 914 S.W.2d 527, 541–42 (Tenn. Ct. App. 1995) (internal citations omitted). The court also recognized that indemnity issues "arise frequently in construction litigation" and "usually involve express contractual indemnity." *Id.* at 542. But whether the obligation is express or implied, a claim for indemnity in the construction context is necessarily "derivative and has for its basis the underlying tort action filed to recover damages for defective construction." *Clinton Seafood*, 1991 WL 50218 at *1. That is, such a claim is premised upon a demand for "damages"—

even if purely economic—arising from claims relating to an alleged "deficiency in the design, planning, . . . or construction of an improvement to real property." Tenn. Code Ann. § 28-3-202.[3]

The Tennessee Supreme Court has not expressly considered whether contractual indemnity claims are subject to the statute of repose. In diversity cases, the federal courts are only bound by the forum state's highest state court. *Faber v. Ciox Health, LLC*, 944 F.3d 593, 601 (6th Cir. 2019). In the absence of controlling authority from the Tennessee Supreme Court, this court must "decide the case as [it] believe[s] the [Tennessee] Supreme Court would." *Clabo v. Johnson & Johnson Health Care Sys., Inc.*, 982 F.3d 989, 993 (6th Cir. 2020) (quoting *Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 385 (6th Cir. 2009)). In doing so, the court is to be

> mindful that the Tennessee Supreme Court would ascertain and give effect to the legislative intent without unduly restricting or expanding [the] statute's coverage beyond its intended scope. Moreover, if the language in the Tennessee statute in question is unambiguous, [the court] will apply its ordinary and plain meaning.

*Id.* (internal quotation marks and citations omitted).

In this case, in light of the Tennessee Supreme Court's broad view of the legislative intent behind the statute, as set forth in *Watts*, and the Tennessee Court of Appeals' repeated conclusion that the statute applies to indemnity claims, this court is persuaded that the Tennessee Supreme Court would extend the statute of repose to apply to contractual indemnity claims.

Because it is undisputed that this lawsuit was filed outside the four-year repose period established by Tenn. Code Ann. § 28-3-202, Georgia Gunite is entitled to summary judgment as a matter of law.

---

[3] For this reason, this court is not persuaded by the contrary conclusion reached by the Indiana Court of Appeals under a similar Indiana law, in a case involving express indemnity. *S. Dearborn Sch. Bldg. Corp. v. Duerstock*, 612 N.E.2d 203, 209 (Ind. Ct. App. 1993).

## V.    CONCLUSION

For the reasons set forth herein, the court will grant Georgia Gunite's Motion for Summary

Judgment.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge