IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION
*Electronically Filed*

| | | |
|---|---|---|
| JERE HINMAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:19-cv-00551 |
| | ) | |
| v. | ) | HON. ALETA A. TRAUGER, |
| | ) | Presiding |
| BRIGHTVIEW LANDSCAPE | ) | JURY DEMAND |
| DEVELOPMENT, INC.; | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BRIGHTVIEW LANDSCAPE | ) | |
| DEVELOPMENT, INC., | ) | |
| | ) | |
| Third-Party Plaintiff. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN COMMERCIAL | ) | |
| INDUSTRIAL ELECTRIC, LLC and | ) | |
| GEORGIA GUNITE AND POOL | ) | |
| COMPANY, INC., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT BRIGHTVIEW'S MOTION FOR
SUMMARY JUDGMENT ON PLAINTIFF'S REMAINING CLAIMS**

Comes Defendant, BrightView Landscape Development, Inc. ("BrightView"), by and
through the undersigned counsel, and hereby submits its Memorandum in Support of its Motion
for Summary Judgment on the remaining claims asserted by Plaintiff.

**INTRODUCTION**

Plaintiff's remaining claims against BrightView are unsupported by any affirmative
evidence. Despite extensive fact discovery in this case, Plaintiff is unable to show that she is

entitled to relief on any of her remaining claims against BrightView. Plaintiff's breach of contract, breach of implied and express warranty, violations of the Tennessee Consumer Protection Act ("TCPA"), negligence, and civil conspiracy claims must be summarily dismissed for this reason. Furthermore, not only do all of Plaintiff's claims run afoul of the statute of limitations governing alleged construction defects, her TCPA claim was also asserted well-past its own limitations period. The facts of this case, coupled with well-settled Tennessee law, lead to the inescapable conclusion that BrightView is entitled to summary judgment in its favor as a matter of law.

## RELEVANT FACTS

On March 19, 2015, Plaintiff and BrightView[1] entered into a Design-Build Contract for the construction of a large pool at Plaintiff's residence in Lebanon, Tennessee (the "Contract"). [*See* DN 1, ¶ 10]. The contract was proposed by Plaintiff's contractor, Tim Prow of PBG Builders. [See J. Hinman Dep., pp. 56 – 57].[2] However, BrightView requested some changes, which were accepted by Plaintiff and incorporated into the contract in an Addendum signed by both parties. [J. Hinman Dep., p. 54, Exhibit 4]. An integral part of the contract, as set forth in the Addendum, provided in relevant part:

> (Add item: 3.1.2.1) As construction is progressing, Design-Builder [BrightView] shall be entitled to make changes to the design materials, means and methods, and details, without notification and without any required approval. Changes shall be in any form that does not change the final approved function and architectural look of the project as shown in Exhibit C.

*Id*. Moreover, the Addendum included the following Clarification:

---

[1] Technically, the Contract was entered into with ValleyCrest Landscape Development, Inc., a predecessor in interest to BrightView. The Court has already recognized that this was proper, and summarily dismissed ValleyCrest. For ease of reference, BrighView will be used throughout this Memorandum.

[2] Throughout the Memorandum, references to deposition pages and exhibits and reports for each individual are combined into a single Exhibit, and references will be made to the page number, exhibit number, or report page number within that individual's exhibit. For example, references to Ms. Hinman's testimony or exhibits to her deposition are contained in an exhibit designated for J. Hinman.

2

> Exhibit B ADE Drawings dated December 23, 2014 are for reference only and to denote the final look and function of the water feature. Design-Builder has the authority to make changes to drawings during the construction without notification or approval, provided that such change does not change the final approved function and architectural look of the project as shown in Exhibit C.

*Id*. Plaintiff demonstrated her agreement with the terms of this Addendum by signing it, and it was incorporated into the contact between Plaintiff and BrightView. [J. Hinman dep., pp. 52 - 54]. Plaintiff admitted that there was a "lot of back and forth" between her and BrightView before the final contract / addendum were signed. *Id*., at 162.

BrightView began work on the project on or around March 23, 2015. [DN 1, ¶ 16]. The project was "substantially complete" in late August or early September, 2015, and BrightView continued to work on the project until it was completed around September 13, 2015. [*Id.,* ¶ 19]. As the project neared its completion, Plaintiff remarked to BrightView representatives that it was gorgeous. [J. Hinman Dep., pp. 109-110]. At the conclusion of the project, Plaintiff expressed satisfaction with everything except for the landscaping. As set forth in a letter from her wealth advisor, Susan Ney, Plaintiff unilaterally decided to withhold the final $10,000.00 payment due to her dissatisfaction with the landscaping. [J. Hinman Dep., p. 105, Exhibit 5]. No other issues or areas of dissatisfaction were noted in that letter, and Plaintiff accepted the project.

Nonetheless, Plaintiff now alleges that, the project was plagued with problems from the very beginning and there was "one problem after another." [J. Hinman Dep., p. 116]. In her Complaint, Plaintiff alleges that shortly after the project was completed in September of 2015, she discovered the following purported issues:

- Significant water leakage;
- Problems with the pump system including the failure of the main pump properly to prime, causing problems with the filtration system, water circulation, and other parts of the pool system;
- An improperly functioning ozonator;

3

- Failure to provide or identify a pool maintenance company with experience and expertise in maintaining such pool structures, despite promising to do so; and
- Improper landscaping, resulting in the death of most of Plaintiff's plants.

[DN 1, ¶ 21]. Plaintiff never produced any evidence to substantiate any of these claims, nor has she come forth with any affirmative evidence that there has been any water loss due to cracking after the retrofitted expansion joint was installed.[3] Her expert, David Chapman, offered no support for her allegation, as he stated he did not have any evidence on which he could offer an opinion that any alleged water loss was due to leaks in the expansion joint. [D. Chapman Dep., p. 131].

One of the major issues that Plaintiff highlights in support of her claim that the pool has continuously malfunctioned and never worked properly relates to the discovery in late November 2015 of cracks in the pool that she believed were causing the pool to lose water, as memorialized in an email of November 27, 2015. [J. Mallon Dep., Exhibit 38]. In response to the concerns of Plaintiff, BrightView immediately commenced an investigation to determine the extent of the problem and try to discover and remedy its source. [J. Mallon Dep., pp. 120-121, 124]. The very next day, Scott Gross advised Plaintiff that someone from BrightView would immediately come to investigate. [J. Hinman Dep., p. 129]. BrightView first checked to see if there were any problems with the plumbing, and there were none. [*Id*., p. 120; J. Mallon Dep., Exhibit 53]. The investigation then focused on the expansion joint.[4] During the course of the investigation, BrightView realized it had inadvertently failed to install an expansion joint that was included in the plan. [J. Mallon

---

[3] Plaintiff has come forward with no evidence to support claims of problems with the pump system, filtration system or water circulation, so these will not be discussed further. The ozonator was replaced, and there is no further evidence it is not currently operational. Plaintiff conceded that maintenance was not covered under the contract [J. Hinman Dep., pp. 92, 97, 99]; however, as an accommodation, BrightView assisted Plaintiff in locating pool maintenance companies on two occasions and trained those individuals. *Id*., at 93, 101. However, Plaintiff fired the first one [*Id*., at 125], and the second one (Sweetwater) terminated their relationship in July 2016. Thereafter, Plaintiff did not hire anyone to maintain the pool, although she did use an individual she knew to perform certain work and maintenance on the pool, and BrightView trained him as well. *Id*., at 135. As for the landscaping, Plaintiff withheld $10,000 from her final payment, after BrightView had already given her a $2,000 credit for the landscaping.
[4] Expansion joints are uncommon in residential pools. [D. Chapman Dep., p. 40].

4

Dep., p. 27]. BrightView worked with ADE, the designer, to come up with a plan to install a retrofitted expansion joint, and in April/May, 2016, BrightView installed an expansion joint to the pool and repaired the cracks. [K. Martin Dep., Exhibits 24, 27, 30, 32; J. Mallon Dep., Exhibit 29, 44; D. Chapman Dep. pp. 208-211].

Subsequent to this installation, Plaintiff claims that she experienced issues with the sprinkler system; the vacuum system; a lack of rebar and inadequate pumps in the waterfalls; replacement of the ozonator; cracks in the pool; and faulty electrical wiring on the equipment pad. [DN 1, ¶ 30]. Plaintiff has come forward with no evidence in support of these allegations either.[5]

Plaintiff filed her Complaint on July 1, 2019. [*See* DN 1]. In her Complaint, Plaintiff alleges seven separate theories of liability against BrightView. Plaintiff contends that BrightView breached certain provisions of the Contract; breached express and implied warranties; violated the Tennessee Consumer Protection Act; committed fraud and wrongful concealment; engaged in a civil conspiracy with Aquatic to defraud Plaintiff; and is liable under a negligence theory. The Court previously dismissed Counts Four and Five. [DN 30]. Now, as set forth herein, the remaining claims are due to be dismissed.

## SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden to set forth "the basis for its motion, . . . identifying

---

[5] Plaintiff has come forward with no evidence in support of any of these allegations. Her own expert agreed that there is rebar in the shotcrete used for the water features, there are no problems with the equipment, the pool shell does not leak, and there are no problems with the electrical systems. [D. Chapman Dep., pp. 90, 154, 180, 187, 203 - 204]. Nor has she come forward with any evidence to support allegations that BrightView did any of the following: (1) "[C]oncealed their wrongful actions and omissions" in an effort to mislead Plaintiff and deter her from seeking redress for damages; (2) Committed a recurring pattern of cover-up and unfair dealing from the inception of the project; (3) Prevented Plaintiff from discovering wrongful actions of BrightView and Aquatic; (4) Fraudulently induced Plaintiff to enter into the Contract; or (5) Failed to correct "a multitude of serious problems" and "sought to hide their misconduct" from Plaintiff, as set forth in Paragraph 30 of her Complaint.

those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets that burden, the burden shifts to the nonmovant to show "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

"Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id* at 322. "[T]o survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Lewis v. Phillip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004). Indeed, summary judgment should be granted when the record reveals no evidence in support of the elements of the plaintiff's cause of action. *See, e.g.*, *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862 (6th Cir. 2007). While the court must review the evidence in the light most favorable to the non-moving party, "the non-moving party is required to do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 586 (1986).

## LAW AND ARGUMENT

Plaintiff's remaining claims against BrightView must be summarily dismissed because, after an extensive period of discovery, the facts in this case simply do not support Plaintiff's claims. First, Plaintiff's claims were asserted outside the three-year statute of limitations applicable to construction defects. Additionally, Plaintiff cannot bring forth any evidence tending to show that BrightView breached the Contract, nor any express or implied warranties allegedly contained therein. Moreover, in addition to the TCPA claim being asserted outside its limitations period,

Plaintiff has produced no admissible evidence that BrightView committed any "unfair or deceptive" conduct in its dealings with Plaintiff. The negligence claim fails as a matter of law, as the facts reveal that BrightView did not breach any duty of care. Additionally, the negligence claim should be dismissed pursuant to the economic loss doctrine, as well as for lack of evidentiary support. Finally, Plaintiff's civil conspiracy claim fails as a matter of law, since the same claim has been dismissed against the alleged co-conspirator, and there is no proof of any predicate tort.

### 1. Plaintiff's remaining claims are barred by the Statute of Limitations.

Plaintiffs remaining claims are barred by the statute of limitations governing claims for construction defects, T.C.A. § 28-3-105. *City of Chattanooga, et. al. v. Hargreaves Associates, Inc.*, 2012 Tenn. App. LEXIS 405 (Tenn. App. January 31, 2012). T.C.A. § 28-3-105(1) states:

> The following actions shall be commenced within three years from the accruing of the cause of action:
>
> (1) actions for injuries to personal or real property[.]

"Accrual" in a property damage action under T.C.A. § 28-3-105(1) occurs upon discovery. *Damron v. Media Gen. Inc.*, 3 S.W.3d 510, 512 (Tenn. Ct. App. 1999). The phrase "from the accruing of the cause of action" in the statute "means from the time when the plaintiff knew or reasonably should have known that a cause of action existed." *Stone v. Hinds*, 541 S.W.2d 598, 599 (Tenn. App. 1976). "The statute is tolled only during the period when the plaintiff has no knowledge at all that a wrong has occurred, and, as a reasonable person is not put on inquiry." *Hoffman v. Hospital Affiliates, Inc.*, 652 S.W.2d 341, 344 (Tenn. 1983). Indeed, the Tennessee Court of Appeals has explained that "inquiry notice charges a plaintiff with knowledge of those facts that a reasonable investigation would have disclosed. . . [O]nce a plaintiff gains information sufficient to alert a reasonable person of the need to investigate the injury, the limitation period begins to run." *Simpkins v. John Maher Builders, Inc.*, 2022 Tenn. App. LEXIS 175, at *42-43

(Tenn. Ct. App. May 4, 2022) (emphasis added) (quoting *Mills v. Booth*, 344 S.W.3d 922, 929 (Tenn. Ct. App. 2010)).

Perhaps recognizing the problematic timing of her Complaint, Plaintiff states that she "has now made her own investigation of these issues and in June 2019 became aware of the misconduct and breaches described above that will require complete replacement of the pool structure." [DN 1, ¶ 30]. This appears to be an attempt to take advantage of a discovery rule to extend the limitations period for filing her suit; however, there is no evidence that there was anything that prevented her from being aware of any potential problem or who may be responsible for any such problem. She testified that BrightView came back several times over the time period of 2015 through 2018 working on the pumps and other issues. [J. Hinman Dep., p. 150].[6]

She testified that the relevant event in June 2019 referenced in her Complaint was a discussion with David Chapman, who she has identified as an expert witness. [J. Hinman Dep., pp. 155-156]. "The discovery rule is not intended to permit a plaintiff to delay filing suit until the discovery of all the facts that affect the merits of his or claim." *Booth*, 344 S.W.3d at 929. As such, the discovery rule requires a party to exercise "reasonable care and diligence" in discovering facts that support a claim." *See Teeters v. Currey*, 518 S.W.2d 512, 517 (Tenn. 1974). Importantly, although the inquiry of whether a plaintiff knew or should have discovered a cause of action is a question of fact, "[i]f the facts, however, are not in dispute and clearly show that a cause of action has accrued and that the statute of limitations has run, a summary judgment may be entered." *Coffey v. Coffey*, 578 S.W.3d 10, 21-22 (Tenn. Ct. App. 2018). Accrual does not require a person allegedly harmed by another to actually know the specific type of legal claim she has, and one's "lack of knowledge concerning the specific nature of the defendants' alleged tortious conduct is

---

[6] To be clear, nor is there any evidence that the pool needs to be replaced, as asserted in her Complaint.

irrelevant for purposes of determining when the cause of action accrued." *Northeast Knox Util. Dist. v. Stanfort Constr. Co.*, 206 S.W.3d 454, 461 (Tenn. Ct. App. 2006). Talking to a retained expert who may alert one to specific causes of action does not allow one to take advantage of the discovery rule.

BrightView was the only general contractor in privity of contract with Plaintiff related to this project, the party that was responsible for providing a pool project as set forth in the various contracts involved. Moreover, BrightView representatives were the individuals Plaintiff reached out to each time she believed she was experiencing a problem with the project. Although she gladly accepted her "gorgeous" project at the conclusion of construction, she now maintains that it has not worked since installation.[7] Plaintiff's frequent contacts to BrightView reporting alleged problems, in conjunction with BrightView's continued efforts over the ensuing three plus years to appease her by responding to what were basically nothing more than maintenance issues [J. Mallon Dep., p. 109], belie her attempt to now convince the Court that something new occurred in June 2019 that, for the first time, directed her attention to BrightView as the party responsible for the alleged problems set forth in her Complaint. Despite taking the position that the pool never worked properly since it was commissioned and substantially completed in August/September 2015, she apparently waited until June 2019 to have a civil engineer review the issues with the pool, and only thereafter filed her lawsuit on July 1, 2019, nearly four years after the date of "substantial completion" when the pool was turned over to her.

The project was substantially complete in September 2015, and that's when the 3-year limitations period commenced. She contacted BrightView repeatedly over the following three year

---

[7] See B. Chesnut Dep., Exhibit 16, p. H00078 (March 14, 2019 email to Brian Chesnut – "There have been multiple problems with the pool since installation and Ms. Hinman has notified you of the various issues over the course of the past three plus years. … The pool has leaked and the pool equipment has not worked correctly since installation. … This is our final attempt to allow Valleycrest to correct its work on its own."].

period complaining of what were primarily maintenance issues, and BrightView continued to return to the project to conduct maintenance and assist her in keeping her project operational. After BrightView declined to respond to yet another complaint in approximately June 2018, Plaintiff reached out to Ken Martin, who visited the pool and found it to be in good working order with a functional expansion joint. [K. Martin Dep., Exhibit 31]. Then another year passed before Plaintiff retained a civil engineer to review the project. There is no evidence BrightView did anything to try to hide any alleged problem, and in fact it was responsive to her complaints long after the one-year warranty period concluded. The facts are not in dispute as to when any potential cause of action accrued, as Plaintiff claims she never had a properly operational pool. Therefore, her Complaint filed July 1, 2019, is time-barred, and her claims must be dismissed.[8]

### 2. Plaintiff's Breach of Contract claim fails.

The essential elements of a breach of contract claim include: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of contract; and (3) damages caused by the breach of contract. *C&W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007) (citing *Lifecare Ctrs. of Am., Inc. v. Charles Town Assoc.'s Ltd. Partnership, LPIMC Inc.*, 79 F.3d 496, 514 (6th Cir. 1996)). Plaintiff's Complaint sets forth a myriad of conclusory allegations that are wholly unsupported by the record.

*Failing to construct the project in accordance with the Contract*: The Addendum to the Contract clearly and unequivocally gave BrightView authority to make changes to the design materials, means and methods, and detail, without notification and without any required approval," so long as it did not change "the final approved function and architectural look of the project." Moreover, it contained a clarification that the ADE drawings that have been discussed at length in

---

[8] BrightView preserved this defense in its Answer. [DN 40, Fifth Defense].

discovery "are for reference only and to denote the final look and function of the water feature." This is commonly referred to in the industry as the builder being responsible for the "means and methods" of implementing the contract plans based on site conditions and other contingencies that come up in the project, and is typical of the way projects are completed. [Chapman, p. 16; D. Ferrell Dep., p. 109]. Brian Chesnut, BrightView Vice President, explained why this approach is necessary and appropriate for this type of project.

> ADE's drawings, they exist in a vacuum. They exist in a perfect world. ADE's drawings are everything works fine. All the dimensions are perfect. Everything comes together. All the circumstances are exactly the way they would want them to when they are drawing them in a studio. And that is just not the way we get a job built. In the field you have constant, constant change, whether it is operational or logistic or weather or unforeseen circumstances or you dig down and you find things that you didn't expect to be there. You are dealing with personalities. You are dealing with product delays. You are dealing with product availability. You are dealing with different personalities. You know, it is a highly fluid, extremely volatile, extremely dangerous scenario to build a construction job. And in order to get a job built, we have to have the ability to make changes in the filed without changing the overall look and function of the job. … "[I]t is an ever-changing environment in a construction job that cannot get defined from a set of plans during the design phase, and we have to have that ability in order to get a job completed."

[B. Chesnut Dep., pp. 42 – 44].

Here, Plaintiff makes much of the fact that BrightView used Shotcrete in the project instead of "cast in place" concrete.[9] It is undisputed, however, that these are exactly the same product, and the only difference is the method of delivery. [D. Ferrell Dep., p. 73-75, 93; D. Chapman, p. 28, 31]. In fact, shotcrete is preferred for this type of project because it gives a more natural look, so long as it's placed correctly. *Id*. Shotcrete is a monolithic pour, which eliminates the need for the differences (which Plaintiff calls "deviations") Plaintiff fixates on, such as the absence of no-leak

---

[9] Documents produced in discovery have uniformly shown that from the beginning it was planned to use shotcrete. [K. Martin Dep., Exhibits 3, 16].

11

flanges, fiberglass sumps, and a vapor barrier. [D. Ferrell Dep., pp. 72, 94, 122].[10] Plaintiff's fixation of the absence of Xypex also misses the mark, as there is no evidence its use was required, nor is it mandated by the standard of care or the professional organization (American Concrete Institute) related to shotcrete. [D. Chapman Dep., pp. 54-55, 71-72]. Xypex was not mentioned in the contract documents nor the Owner's Program that formed the initial design plans for the project, nor was it included in pricing the project. *Id.*, at 160, 176 – 177, 185. Doug Ferrell, who has designed hundreds of pools, testified that he has never designed an in-ground pool that had Xypex. [D. Ferrell Dep., p. 52]. Perhaps most importantly, however, is that Plaintiff's own expert offered no proof that the absence of Xypex caused any problems or leaks in the pool. [D. Chapman Dep., p. 204].

*Failing to give Plaintiff ownership of documents*: Plaintiff posits that she should have been given access to change orders and "as-built" drawings. However, it is undisputed that there were no change orders other than the change order indicating that Plaintiff withheld $10,000 from her final payment. [K. Martin Dep., pp. 92-93; J. Mallon Dep., pp. 42, 53, Exhibit 9]. Moreover she testified that she does not remember if she asked for change orders. [J. Hinman Dep., p. 197]. Additionally, she was given as-built drawings at the time of commissioning, as well as a supplemental set. [J. Mallon Dep., pp. 76-77].

*Other complaints*: Plaintiff's allegation that BrightView failed to perform warranty obligations is addressed above, and the undisputed evidence is that BrightView continued to respond to Plaintiff's complaints long after the one-year period ended, and the bulk of those complaints were maintenance related due to the fact that Plaintiff had no one to regularly perform that function after July 2016. [J. Mallon Dep., pp. 120-121; B. Chesnut Dep., pp. 98-99, 103]. As

---

[10] Plaintiff's own expert testified that there is no evidence that the field formed sumps (which were installed instead of fiberglass sumps) were the source of any leak. [D. Chapman Dep., p. 212].

for her allegation that BrightView failed to deduct amounts required to be spent to correct defective work, Plaintiff admitted that she never asked BrightView to do this. [J. Hinman Dep., p. 160]. As for her allegation that BrightView was legally licensed to act as a contractor, her own expert dispelled that claim. [D. Chapman Dep., p. 143].[11]

At the end of the day, the only evidence that Plaintiff has offered in support of her breach of contract claim, i.e., that the project as delivered failed to comply with the project as visualized and designed, is that her expert witnesses, David Chapman and Luke Brown, have offered opinions that the expansion joint leaks. [D. Chapman Dep., p. 157, 203 - 204]. The biggest shortcoming with their opinions, however, which make them unreliable and inadmissible, is that neither of them understands how the expansion joint works. Specifically, Chapman and Brown both relied on a simple viewing of the performance of the caulking on the surface of the joint, and Chapman even opined that the "expansion joint had been replaced" by Plaintiff in 2020. Importantly, however, neither of them inspected or examined the intricate structure of the joint that lies beneath the caulking on the surface of the joint. [D. Chapman Dep., pp. 209 – 212; L. Brown Dep., pp. 50 - 53]. Plaintiff's expert witness, David Chapman, conceded that the "waterstop" that lies at the bottom of the joint would have to be "assaulted" in some way for water to escape the pool. Yet, he admitted that he never examined that waterstop, nor is there any evidence indicating it was ever

---

[11] Plaintiff also complains that BrightView failed to achieve substantial completion under the Contract's specified date, despite time being of the essence. [DN 1, Page ID# 21]. This claim also fails as a matter of law, since Plaintiff waived her right to enforce any "time is of the essence" clause. When time is of the essence, "the failure of a party to meet a condition precedent gives the other party a basis to rescind the contract. However, a party to a contract may waive a "time is of the essence" provision. *See Alexander & Shankle, Inc., v. Metropolitan Government of Nashville and Davidson County*, 2007 Tenn. App. LEXIS 521 (Tenn. Ct. App. Aug. 13, 2007) (a "non-defaulting party may . . . by conduct indicating an intention to regard the contract as still in force after the other party's default, waive a provision in the contract making time of the essence.") "Thus, an owner, knowing construction will not be completed before the deadline, who allows the contractor to continue working after the deadline and encourages the contractor to finish the job, waives his right to terminate under a 'time is of the essence' provision." *Id.*

inspected or that there has been any problem with its performance. That alone precludes Plaintiff's breach of contract claim.

### 3. Plaintiff's claims for Breach of Express and Implied Warranties fail.

Plaintiff claims that BrightView breached an express warranty in the Contract by "using equipment and material that was not in conformance with the Contract, including, but not limited to, using material that was not of good quality, including the sprinkler system, pump system, electrical system, and other equipment, and by failing to replace dead plant life as required." [DN 1, ¶ 38]. These claims are also without merit.

Here, Plaintiff's claim that inferior equipment was used and that it was not in conformity with the design plans finds absolutely no support in the record. In fact, just the opposite is true. [K. Martin Dep., pp. 39-40, 82, 228, 245; J. Mallon Dep., pp. 29, 189, 202]. Further, Plaintiff claims that BrightView breached certain implied warranties in the Contract, including the warranties of merchantability and fitness for a particular purpose regarding the pool system. This also is without merit, as BrightView expressly waived all implied warranties in the Contract. No matter whether the Uniform Commercial Code or Tennessee common law principles govern, the conclusion is the same. A contractual warranty may be express or implied, and it need not be stated in any particular or technical language. *Sikora v. Vanderploeg*, 212 S.W.3d 277, 285-86 (Tenn. Ct. App. 2006). "A breach of warranty occurs when the warranted fact or condition is in reality not as it was represented." *Id.* at 286. "A person seeking to prove a breach of warranty has the dual burden of proving the pertinent terms of the warranty and the fact that those terms were breached." *Id.*

According to the plain language in the Contract, BrightView expressly waived any implied warranties. The Contract clearly and unambiguously states:

> 3.7 WARRANTY
> …

14

3.7.2. To the extent products, equipment, systems, or material incorporated in the Work are specified and purchased by the Owner, they shall be covered exclusively by the warranty of the manufacturer. **There are no warranties which extend beyond the description on the face thereof.** To the extent products, equipment, systems, or materials incorporated in the Work are specified by the Owner but purchased by the Design-Builder and are inconsistent with selection criteria that otherwise would have been followed by the Design-Builder, the Design-Builder shall assist the Owner in pursuing warranty claims. ALL OTHER WARRANTIES EXPRESSED OR IMPLIED INCLUDING THE WARRANTY OF MERCHANTABILITY AND THE WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE ARE EXPRESSLY DISCLAIMED.

[DN 1-2, Page ID# 41] (emphasis added). Under the UCC, specifically T.C.A. § 47-2-316, an implied warranty may be waived by contract. Here, the subject implied warranties that Plaintiff alleges were breached were effectively waived. The language is clear and unambiguous, and is conspicuously placed in CAPITAL LETTERS under the Warranty section of the contract that Plaintiff's contractor proposed, and which Plaintiff signed. It is disingenuous that she now claims that there are implied warranties, when the contract she herself proposed clearly and unequivocally disclaimed any such implied warranties.

Tennessee common law compels the same conclusion. Under the common law, "[b]uilder-vendors and purchasers are free to contract in writing for a warranty upon different terms and conditions or to expressly disclaim any warranty." *Dixon v. Mountain City Construction Co.*, 632 S.W.2d 538, 542 (Tenn. 1982). However, "[i]n order to have a valid disclaimer of the implied warranty, it must be in clear and unambiguous language. The buyer must be given adequate notice of the implied warranty protections that he is waiving by signing the contract." *Dewberry v. Maddox*, 755 S.W.2d 50, 55 (Tenn. Ct. App. 1988); *Campbell v. Teague*, 2010 Tenn App. LEXIS 239, at *34-35 (Tenn. Ct. App. Mar. 31, 2010). Likewise, similar to the above analysis under the UCC, the clear and unambiguous language of the contract that Plaintiff proposed, and signed, effectively disclaims any implied warranties.

15

The Court does not have to determine whether the subject contract is to be analyzed under the UCC or the common law of contracts because in both instances, it is clear that any implied warranties were effectively disclaimed. As such, Plaintiff's claim fails as a matter of law.

**4. Plaintiff's Tennessee Consumer Protection Act claim fails.**

Plaintiff claims that BrightView violated the Tennessee Consumer Protection Act ("TCPA") by allegedly engaging in certain unfair or deceptive practices. Specifically, Plaintiff claims that BrightView violated T.C.A. § 47-18-104(b)(1), (2), and (3). This claim also fails. Firstly, Plaintiff's TCPA claim is barred by the statute of limitations contained in the Act. Per the provisions of the TCPA, a claim thereunder must be filed within one year from the discovery of the alleged unlawful acts. *See* T.C.A. § 47-18-110. Secondly, even if not barred by the statute of limitations, Plaintiff's claim under the TCPA still substantively fails, as she has presented no evidence in support of the claim.

A party bringing a Tennessee Consumer Protection Act action must prove that there was some deception, misrepresentation or unfairness, regardless of any breach of contract. *Brown v. Wright*, 2019 Tenn. App. LEXIS 469, at *18-18 (Tenn. Ct. App. Oct. 7, 2019). A deceptive act or practice "is one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact." *Tucker v. Sierra Builders*, 180 S.W.3d 109, 116 (Tenn. Ct. App. 2005). "Thus, for purposes of the TCPA and other little FTC acts, the essence of deception is misleading consumers by a merchant's statements, silence, or actions." *Id.* An act or practice should not be deemed "unfair" "unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." *Id.* at 116-17.

16

Here, Plaintiff has offered no evidence that BrightView: (1) concealed or misrepresented the pricing of the project; or (2) concealed any issues related to the failure to install the expansion joint during the initial construction or that the retrofitted joint was improperly installed.[12] Nor is there any substance to Plaintiff's claim related to BrightView's licensing, as Plaintiff's own expert, David Chapman, testified that he determined that BrightView was properly licensed as a contractor in the state of Tennessee. Thus, in addition to this claim being untimely, there is no factual support for it, and it too must be dismissed.

### 5. Plaintiff's Negligence claim lacks evidentiary support and is barred by the economic loss doctrine.

Like her other claims, Plaintiff's negligence claim also lacks evidentiary support. Plaintiff claimed in her Complaint that BrightView breached its duty of care to Plaintiff by "not designing, engineering, and constructing the pool in accordance with the duty of care owed to Ms. Hinman." [DN 1, ¶ 64]. For the same reasons stated above, there is no evidence to support Plaintiff's claim that BrightView did not use proper waterproofing techniques. Further, her focus on the failure to install an expansion joint in the first instance is misplaced. First, there is no conclusive evidence this caused the cracking problems in the first place, only speculation. Doug Ferrell opined that the cracks that suddenly appeared on or about November 27, 2015 are not consistent with not having an expansion joint, as cracks of that type that would have occurred slowly over time due to differential movement. These, on the other hand, occurred suddenly (between September 13 and November 27). [D. Ferrell Dep., pp. 84, 106]. There is no evidence there is any problem with the

---

[12] See generally, J. Mallon Dep., pp. 20-1, 44, 147; B. Chesnut Dep., Exhibit 16; K. Martin Dep., Exhibit 31; B. Chesnut Dep., Exhibit 16. Moreover, there is no evidence that the cracks were actually caused by failure to install the expansion joint. [See D. Ferrell's Report, pp. 10-13]. Even Plaintiff's own expert, David Chapman, does not offer an opinion that the cracks were caused by the failure to install an expansion joint or that the joint was installed improperly. There has been not one iota of evidence that the joint is, in fact, not functioning as it should, because there is no evidence that the dumbbell waterstop has been examined or demonstrated to have been breached. That's where the integrity of the EJ lies, and P has not put forth any evidence that it is not working properly.

grounding of the electrical equipment, and Plaintiff testified that she doesn't even know why ACIE was involved.[13] P's expert Chapman offers no opinion to support this. [See also, J. Mallon Dep., p. 209]. Plaintiff's own expert witness, Luke Brown, found all plumbing and equipment to be operational.

Plaintiff has offered no evidence that BrightView breached any duty to her. *See Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993). Additionally, the economic loss doctrine requires that Plaintiff's negligence claim be dismissed. The rationale behind the economic loss doctrine as applied in Tennessee is that a plaintiff should not be able to obtain relief under tort law for a dispute that should be resolved under contract law principles as applied to a written agreement between the parties. *See Trinity Industries, Inc. v. McKinnon Bridge Co., Inc.*, 77 S.W.3d 159, 171-72 (Tenn. Ct. App. 2001); *see also Messer Griesheim Indus., Inc. v. Eastman Chemical Co.*, 194 S.W.3d 466 (Tenn. Ct. App. 2005) (when only economic losses involved, rights of parties are governed exclusively by their contract). Indeed, the doctrine is "a judicially created principle that reflects an attempt to maintain separation between contract law and tort law by barring recovery in tort for purely economic loss." *Lincoln General Insurance v. Detroit Diesel*, 293 S.W.3d 487, 488 (Tenn. 2009).

Further, the economic loss doctrine is not confined only to transactions involving the sale of goods or cases relating to products liability. In *Ladd Landing, LLC v. Tenn. Valley Auth.*, 847 F.Supp.2d 727, 732 (E.D. Tenn. 2012), the court rejected the notion that the Tennessee Supreme Court would abstain from applying the doctrine to contracts beyond products liability cases. In March of 2022, the Tennessee Court of Appeals agreed that the economic loss doctrine is not limited only to products liability theories. *See Commercial Painting Co. v. Weitz Co. LLC*, 2022

---

[13] For purposes of this motion, BrightView adopts the reasoning and facts set forth in ACIE's Motion for Summary Judgment, and to the extent it is granted, there is no basis for any such claims being asserted against BrightView.

Tenn. App. LEXIS 92, at *68-69 (Tenn. Ct. App. Mar. 11, 2022). In *Commercial Painting*, the Court thoroughly analyzed extra-jurisdictional case law to determine whether the doctrine applied to bar a fraud claim that arose out of the very grounds alleged as a basis for the plaintiff's breach of contract action. *See id.* at *54-68. The Court extended the protection of the economic loss doctrine beyond issues related to products liability, holding that plaintiff's fraud claim was barred by the rule. *See id.* at *68-69.

Importantly, when coming to the conclusion in *Commercial Painting*, the Tennessee Court of Appeals found persuasive the Arizona Supreme Court's decision in *Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*, 223 P.3d 664 (Ariz. 2010). *See Commercial Painting*, at *56-58. In *Flagstaff*, the Arizona Supreme Court considered, as a matter of first impression, whether to extend the economic loss rule to cases involving **construction contracts**. As noted by *Commercial Painting*, the Arizona Supreme Court aptly recognized that the "underlying policies of tort and contract law in the construction setting" supported the application of the doctrine to construction contracts. *See Flagstaff*, at 669. According to the Arizona Supreme Court, and agreeable to the Tennessee Court of Appeals:

> The contract law policy of upholding the expectations of the parties has as much, if not greater, force in construction defect cases as in product defect cases. Construction-related contracts often are negotiated between the parties on a project-specific basis and have detailed provisions allocating risks of loss and specifying remedies. In this context, allowing tort claims poses a greater danger of undermining the policy concerns of contract law. That law seeks to encourage parties to order their prospective relationships, including the allocation of risk of future losses and the identification of remedies, and to enforce any resulting agreement consistent with the parties' expectations.
>
> Moreover, in construction defect cases involving only pecuniary losses related to the building that is the subject of the parties' contract, there are no strong policy reasons to impose common law tort liability in addition to contractual remedies. When a construction defect causes only damage to the building itself or other economic loss, common law contract remedies provide an adequate remedy because they allow recovery of the costs of

19

remedying the defects, and other damages reasonably foreseeable to the parties upon entering the contract.

*Commercial Painting*, at \*57-58 (quoting *Flaggstaff*, 223 P.3d at 669). The same principles should be applied to the case at bar to preclude Plaintiff's negligence claim.[14]

## <u>CONCLUSION</u>

Try as she might, Plaintiff has come forward with no evidence to support her numerous claims against BrightView as she got what she asked for. It may not be what she now wants, as she apparently has been unsuccessful in maintaining the gorgeous project BrightView presented her in accordance with the contract. However, that does not mean BrightView breached any duty or contractual obligation, or committed any unfair or fraudulent conduct in its construction of this project. And it certainly doesn't support her claim that BrightView is responsible for all the baseless allegations asserted in her Complaint. In short, Plaintiff has not proven the claims asserted in her Complaint, and it should be dismissed.

**THEREFORE**, BrightView is entitled to judgment as a matter of law, and respectfully requests that the Court so find.

---

[14] BrightView will not address the Conspiracy claim, as there can be no legal support for that claim in light of the fact that ADE has been dismissed from this action.

Respectfully submitted,

*/s/ W. Douglas Kemper*
James M. Burd (TN Bar No. 34940)
W. Douglas Kemper (*pro hac vice*)
**Wilson, Elser, Moskowitz, Edelman & Dicker, LLP**
100 Mallard Creek Road, Suite 250
Louisville, Kentucky 40207
Telephone:  (502) 238-8500
Facsimile:  (502) 238-7995
james.burd@wilsonelser.com
doug.kemper@wilsonelser.com
*Counsel for Defendant,*
*BrightView Landscape Development, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was electronically filed using the ECF/CM electronic filing system on this 18th day of October, 2022, which will send notice of electronic filing to the following:

John O. Belcher
Katherine Garro McCain
BELCHER SYKES HARRINGTON, PLLC
320 Seven Springs Way, Suite 110
Brentwood, TN  37027
jbelcher@bshlawyers.com
kmccain@bshlawyers.com
*Counsel for Plaintiff Jere Hinman*

Brian S. Spitler
Angela Cirina Kopet
COPELAND, STAIR, KINGMA & LOVELL, LLP
735 Broad Street, Suite 1204
Chattanooga, TN 37402
bspitler@csvl.law
akopet@csvl.law
*Counsel for Defendant, Aquatic Design &*
*Engineering, Inc.*

Vic L. McConnell
Smith Cashion & Orr
424 Church Street, Suite 1200
Nashville, TN  37219
vmcconnell@smithcashion.com
*Counsel for Third-Party Defendant*

*American Commercial Industrial Electric,*
*LLC*

Isaac S. Lew
Lewis Thomason, P.C.
40 S. Main Street, Suite 2900
Memphis, TN  38103
sbarton@lewisthomason.com
ilew@lewisthomason.com

and

Reba Brown
Lewis Thomason, P.C.
424 Church Street, Suite 2500
P.O. Box 198615
Nashville, TN  37219-8615
rbrown@lewisthomason.com
*Counsel for Third-Party Defendant*
*Georgia Gunite and Pool Company, Inc.*

*/s/ W. Douglas Kemper*
*Counsel for Defendant,*
*BrightView Landscape Development, Inc.*

276257976v.1